1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

**HECTOR SANTIAGO,**

    **Plaintiff,**

     **v.**

**UNITED STATES DEPT. OF THE
ARMY, et al.,**

    **Defendants.**

**Civil No. 11-1666 (GAG)**

## <u>OPINION AND ORDER</u>

Hector Santiago ("Plaintiff") brings this action against the United States Department of the Army ("Army") and John McHugh the Secretary of the Army ("McHugh") (collectively "Defendants") seeking damages as a result of retaliatory treatment by Plaintiff's supervisors. (See Docket No. 1 at ¶ 1.1.) Presently before the court is Defendants' motion to dismiss (Docket No. 16), which argues Plaintiff failed to exhaust his administrative remedies prior to bringing the present suit. Defendants argue, in the alternative to dismissal for failure to exhaust administrative remedies, that the court should grand Defendants summary judgment on Plaintiff's denial of training claim. (See Docket No. 17 at 7.) Plaintiff responded to this motion at Docket No. 25. After reviewing these submissions and the pertinent law, the court **GRANTS** Defendants' motion to dismiss.

### I.    Standard of Review

"The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Gargano v. Liberty Intern. Underwriters, Inc.</u>, 572 F.3d 45, 48 (1st Cir. 2009) (citations omitted) (internal quotation marks omitted). "This short and plain statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Id.</u> (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to

1    Civil No. 11-1666 (GAG)                    2

2    state a claim upon which relief can be granted.  See FED.R.CIV.P. 12(b)(6).  To survive a Rule

3    12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is

4    plausible on its face." Twombly, 550 U.S. at 570.  The court must decide whether the complaint

5    alleges sufficient facts to "raise a right to relief above the speculative level." Id. at 555.  In so doing,

6    the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's

7    favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008).  However, "the tenet that a court must

8    accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."

9    Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements

10   of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly,

11   550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the

12   mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' -'that the pleader

13   is entitled to relief.'" Iqbal, 556 U.S. 662, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

14       **II.   Factual and Procedural Background**

15           **A.   Employment History**

16           Plaintiff was an active duty member of the Army for twenty-five years. (See Docket No. 1

17   at ¶ 5.1.)  In 1999, Plaintiff retired from the Army and began working for the Immigration and

18   Naturalization Services, currently part of the Department of Homeland Security. (See id. at ¶ 5.2.)

19   In 2001, Plaintiff resumed working for the Army as a civilian employee as a Management Assistant.

20   During this time period Plaintiff earned his bachelor's degree in business administration and his

21   Master's in Business Administration. (See id. at ¶ 5.4.)  In 2002, Plaintiff was assigned to the

22   Resource Management Budget Office at Fort Buchanan in Puerto Rico where he maintained fund

23   control of appropriations for the offices of the Secretary of the Army and Operating and Maintenance

24   of the Army, amongst other duties. (See id. at 5.5.)  Plaintiff was also assigned the duties of a

25   counselor for the Equal Employment Opportunity ("EEO") in 2002. (See Docket No. 1 at ¶ 5.6.)

26   Plaintiff was then recalled to active duty with the Army in 2005 and 2006 to perform duties as an

27   administrative specialist. (See id. at 1 at ¶ 5.7.)

28           Plaintiff began working as an EEO Specialist in 2007 earning a salary of $40,000 and was

1

**Civil No. 11-1666 (GAG)**                    3

2

appointed Acting EEO Director in April 2008. (See Docket No. 1 at ¶¶ 5.9 & 5.10.) Plaintiff has

3

worked in that capacity since 2008. (See id. at ¶ 5.10.) During the course of his employment,

4

Plaintiff alleges his duties required him to make certain decisions that were not favorable for his

5

supervisors, Commander of the Army Installation Pedersen ("Pedersen") and Magda Figueroa

6

("Figueroa"), whom Plaintiff replaced as EEO Director while she was on leave. (See id. at ¶¶ 5.9

7

& 5.11.)

8

It was during this time that Figueroa expressed to Plaintiff that he was not properly doing his

9

job because he was not watching his commander's back. (See id. at ¶ 5.11.) On February 13, 2009

10

the Army posted the open position of EEO Director, the position Plaintiff was temporarily filling

11

in Figueroa's absence. (See Docket No. 1 at ¶ 5.12.) Plaintiff applied, but was not chosen to

12

permanently fill the position. (See id.) The candidate chosen for the position declined the offer and

13

the Army continued to advertise the position. (See Docket No. 1 at ¶ 5.13.) Plaintiff alleges he was

14

the only one to apply for the job, but was not given an offer, allegedly due to his previous conduct

15

of not watching his commander's back. (See id.) Plaintiff requested a salary increase due to the

16

increased workload of filling in as EEO Director, as well as completing the additional duties that

17

were asked of him. (See id. at ¶ 5.15.) Plaintiff had also requested to attend certain trainings to

18

improve his technical knowledge, but those requests were denied. (See Docket No. 1 at ¶ 5.16.)

19

In 2011, Plaintiff requested a transfer from the EEO Office due to health problems and the

20

stress of completing the duties of two jobs simultaneously. (See id. at ¶ 5.17.) Plaintiff alleges that

21

when the position of EEO Director was again advertised, he was discouraged from applying from

22

the job and that Pedersen specifically stated he would not recommend Plaintiff for the position

23

because he put the management of the EEO Office in a difficult position. (See id. at 19.) On May

24

8, 2011 Plaintiff was transferred to the Logistics Office where he handles EEO cases. (See Docket

25

No. 1 at ¶ 5.20.)

26

**B.      Administrative Actions**

27

On June 21, 2010, Plaintiff filed a formal complaint with the EEO, alleging three causes of

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Civil No. 11-1666 (GAG)**                    4

action: (1) Failure to train; (2) Equal Pay; and (3) Various discrimination claims.  (See Docket No. 18-1.)[1]  In response, on July 9, 2010, Defendants dismissed all Plaintiffs claims except for his denial of training claim.  (See Docket No. 18-2.)  Defendants issued a final agency decision ("FAD") on April 14, 2011, in which Defendants affirmed the prior dismissals of Plaintiffs claims and also dismissed his failure to train claim.  (See Docket No. 18-3.)  Plaintiff appealed that decision to the Office of Federal Operations of the Equal Employment Opportunity Commission ("EEOC") on May 27, 2011.  (See Docket No. 18-4.)  The instant appeal was filed with the district court on July 12, 2011.  (See Docket No. 1.)  The EEOC dismissed Plaintiff's administrative appeal on September 13, 2011 due to Plaintiff's filing the appeal with the district court.  (See Docket No. 18-5.)

Plaintiff filed a second formal complaint of discrimination with the Defendants on July 6, 2011 claiming retaliation.  (See Docket No. 18-6.)  The issues raised in the second complaint are also covered in the instant complaint filed with this court on July 12, 2011.  (See Docket No. 1 at ¶ 5.20.)  Defendants dismissed Plaintiff's second complaint on August 3, 2011 because Plaintiff filed the present complaint with the district court.  (See Docket No. 18-8.)

**III.    Discussion**

**A.    Administrative Remedies**

---

[1] "Ordinarily a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d at 30, 33 (1st Cir. 2001) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  However, there is "a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" Alt. Energy, Inc., 267 F.3d at 33 (quoting Watterson, 987 F.2d at 3).  The complaint refers to the complaints of discrimination filed with the EEO as well as the final decision from .  (See Docket No. 1 at ¶ 3.1.)  Plaintiff, in his opposition to Defendants' motion to dismiss, does not refute the authenticity of the documents provided by Defendants regarding Plaintiff's administrative filings.  These documents may be considered by the court without converting the present motion to dismiss into a motion for summary judgment because they are not disputed by the parties and therefore meet one of the exception to the rule.

1    **Civil No. 11-1666 (GAG)**                    5

2          "Before an employee may sue in federal court on a Title VII claim, he [or she] must first

3    exhaust administrative remedies." Franceschi v. U.S. Dep't of Veteran Affairs, 514 F.3d 81, 85 (1st

4    Cir. 2008) (citing Love v. Pullman Co., 404 U.S. 522, 523 (1972)). Failure to do so will lead to the

5    dismissal of the plaintiff's claim. See Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 71 (1st Cir. 2011).

6    Federal employees must follow the administrative process laid out in the Code of Federal

7    Regulations ("CFR") beginning with the initial contact with an EEO counselor. See 29 C.F.R. §§

8    1614.103, 1614.105. The plaintiff must make the initial contact with an EEO officer within 45 days

9    of the complained conduct and then may file a formal complaint with the EEO if the issue is not

10   resolved. See 29 C.F.R. §§ 1614.105, 1614.106. The formal complaint must filed with the agency

11   within 15 days of receiving notice from the EEO counselor. See 29 C.F.R. § 1614.105. If the

12   agency issues a FAD, then the plaintiff has 90 days to appeal. See 29 C.F.R. § 1614.407. If after 180

13   days the agency has not issued a FAD, the plaintiff may file an action with the district court or appeal

14   to the EEOC to have the complaint decided by an administrative law judge. See id.; 29 C.F.R. §

15   1614.110(a). Federal employees, such as Plaintiff in this case, must exhaust these administrative

16   remedies prior to filing an action with the district court. See Velazquez-Ortiz, 657 F.3d at 71.

17                          **B.    Constitutional Claims**

18         To begin, Plaintiff seeks redress for a constitutional violation among his list of other

19   violations. (See Docket No. 1 at 8.) However, Plaintiff does not expand on this claim or direct the

20   court to which provision of the Constitution Defendants supposedly violated. Regardless of the

21   provision, his constitutional claim is preempted by Title VII. The facts of this case make clear that

22   all claims in this case stem from the alleged discriminatory conduct of Defendants and there are no

23   allegations of activity that would require this court to change its analysis. See Kibbe v. Potter, 196

24   F. Supp. 2d 48, 69 (D. Mass. 2002) (stating claims must raise constitutional issues beyond

25   discrimination in order to avoid preemption by Title VII). As no allegations include conduct that

26   is not covered by Title VII, the court finds Plaintiff's constitutional claim to be preempted by

27   Plaintiff's Title VII claim.

28                          **C.    Failure to Exhaust**

**Civil No. 11-1666 (GAG)**                          6

In order to resolve Defendants' assertion that Plaintiff failed to exhaust his administrative remedies, the court finds three dates to be of utmost importance. Plaintiff appealed the FAD of his first complaint to the EEOC on May 27, 2011. (See Docket No. 18-4.) Plaintiff filed his second complaint with the EEO on July 6, 2011 (Docket No. 18-6) and filed an appeal for both complaints with the district court on July 12, 2011 (Docket No. 1). In a quick review of the administrative process outlined above, it is clear Plaintiff has failed to exhaust his administrative remedies. The first complaint was appealed to the EEOC. Because the EEOC never issued a decision, Plaintiff was required to wait 180 days before filing his complaint in district court. Plaintiff filed his complaint with this court a mere month and a half after filing his appeal with the EEOC, well short of the 180 day requirement. Therefore, Plaintiff failed to exhaust his administrative remedies for his initial complaint.

Plaintiff's second complaint is was filed on July 6, 2011, six days prior to the filing of this complaint. (See Docket No. 18-6.) Clearly, this filing occurred well before any administrative requirement allowed him to do so and most likely before his claim was even investigated. Therefore, Plaintiff has also failed to exhaust the administrative remedies of his second complaint.

It is well understood that when deciding motions to dismiss for failure to exhaust administrative remedies, the most important factor is whether the plaintiff allowed the administrative remedies to be resolved without interference. See Saulters v. Nicholson, 463 F. Supp. 2d 123, 125-26 (D. Mass. 2006) (citing Brown v. Snow, 440 F.3d 1259, 1264 (11th Cir. 2006)). The exhaustion requirements serve two important purposes, that of allowing the federal agency the opportunity to correct its mistakes before being haled into court and promotes efficiency as the administrative process typically moves faster than the official litigation process. See Saulters, 463 F. Supp. 2d at 126 (citing Woodford v. Ngo, 548 U.S. 81, 89 (2006)). As is this court's practice, it agrees with the Supreme Court and applies its logic to this case.

Plaintiff attempts to wrestle out of his failure to exhaust the available administrative remedies by claiming the court should view Plaintiff's claims as alleging continuing violations. This excuse does not exempt Plaintiff from exhausting his administrative remedies, it merely changes the legal

**Civil No. 11-1666 (GAG)**                     7

argument of his complaint.  Plaintiff's second contention, that his EEO filing of July 6, 2012 was merely informative and not intended as a formal filing is unpersuasive.  The court has reviewed the filing and cannot locate any content that would alert the EEO or the court that it merely was meant to inform the EEO of an impending complaint being filed in federal court.

### IV.    Conclusion

For the reasons set forth above, the court **GRANTS** Defendants' motion to dismiss Plaintiff's complaint (Docket No. 16) due to his failure to exhaust administrative remedies.


**SO ORDERED.**

In San Juan, Puerto Rico this 19th day of June, 2012.

*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge